**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

ALFONSO CHAVEZ, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

               Plaintiff,

        v.

NORIMEN INC.
      d/b/a NORIMEN,
TORIBRO RAMEN INC.
      d/b/a TORIBRO RAMEN,
MOCHIRON INC.
      d/b/a MOCHIRON IZAKAYA,
and HWAL KIM,

             Defendants.

_____

Case No:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

      Plaintiff ALFONSO CHAVEZ (hereby, "Plaintiff"), on behalf of himself and others

similarly situated, by and through his undersigned attorneys, hereby files this Class and

Collective Action Complaint against Defendants, NORIMEN INC. d/b/a NORIMEN,

TORIBRO RAMEN INC. d/b/a TORIBRO RAMEN, MOCHIRON INC. d/b/a MOCHIRON

IZAKAYA, ("Corporate Defendants"), and HWAL KIM ("Individual Defendant", and together

with Corporate Defendants, "Defendants") and states as follows:

1

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime due to improper time-shaving and rounding, (2) unpaid overtime premiums due to unlawful straight rate compensation, (3) unreimbursed costs for maintaining uniforms, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime due to improper time-shaving and rounding, (2) unpaid overtime premiums due to unlawful straight rate compensation, (3) unpaid spread of hours premiums, (4) unreimbursed costs for maintaining uniforms, (5) liquidated damages, (6) statutory penalties due to WTPA violations, and (7) attorneys' fees and costs.

3.      Plaintiff further alleges that, pursuant to Internal Revenue Code, 26 U.S.C. § 7434, he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4.      Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

7.      For all relevant periods, Plaintiff ALFONSO CHAVEZ was a resident of Kings County, New York.

8.      Individual Defendant owns and operates a restaurant enterprise, comprised of three (3) locations in New York that have been under the following trade names:

    a.  Norimen, 24 Elizabeth St, New York, NY 10013;

    b.  Toribro Ramen, 366 W 52nd St, New York, NY 10019;

    c.  Mochiron Izakaya, 34-18 30th Ave., Astoria, NY 11103.

(collectively, the "Restaurants")

9.      All the Restaurants are operated as a single integrated enterprise under the common control of the Individual Defendant. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

    a.  Defendants are engaged in the same business of operating East Asian restaurants in New York City.

    b.  All Restaurants are under the control of Corporate and Individual Defendants. Specifically, Individual Defendant HWAL KIM operates the totality of the Restaurants.

c.  The liquor licenses provided by the New York State Liquor Authority for TORIBRO RAMEN INC. and MOCHIRON INC., list Individual Defendant HWAL KIM as a "principal" of their restaurants. *See* **Exhibit A**.

d.  On the liquor license stipulations for administrative approval with Manhattan Community Board 3, Individual Defendant HWAL KIM identifies himself as a principal of NORIMEN INC., TORIBRO RAMEN INC. and MOCHIRON INC. *See* **Exhibit B**.

e.  An official website of the City of New York lists Individual Defendant HWAL KIM as the owner of NORIMEN INC. and MOCHIRON INC. *See* **Exhibit C**.

10.    All Corporate Defendants are appropriately named in this action because the Restaurants share identical illegal wage and hour policies and are under common ownership, management and control. The Restaurants and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the FLSA Collective Plaintiffs and Class Members for whom Plaintiff seeks to represent.

11.    Corporate Defendant, NORIMEN INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process at 24 Elizabeth Street, New York, NY, 10013.

12.    Corporate Defendant, TORIBRO RAMEN INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process at 366 W. 52nd Street, New York, NY.

13.    Corporate Defendant, MOCHIRON INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process at 34-18 30th Ave., Astoria, NY, 11103.

14.     Individual Defendant HWAL KIM is a principal of all Corporate Defendants. Individual Defendant HWAL KIM exercises operational control as it relates to all employees including Plaintiff. Individual Defendant HWAL KIM exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, employees of Defendants' Restaurants could complain to Individual Defendant HWAL KIM directly regarding any of the terms of their employment, and Individual Defendant HWAL KIM would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant HWAL KIM exercises functional control over the business and financial operations of each of the Corporate Defendants.

15.     At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

16.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

17.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

18.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt, front-of-house and back-of-house employees (including servers, waiters, bussers, bartenders, food runners, hostesses, counterpersons, delivery persons, chefs, cooks, line-cooks, food preparers, cashiers, porters, and

dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages and overtime premiums, including: (i) unpaid wages, including overtime due to time-shaving, improper rounding, (ii) unpaid overtime premiums due to straight rate compensation, and (iii) unreimbursed costs for maintaining uniforms. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

20.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS**

21.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt, front-of-house and back-of-house employees (including servers, waiters, bussers, bartenders, food runners, hostesses, counterpersons, delivery persons, chefs, cooks, line-cooks, food preparers, cashiers, porters, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

22.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

24.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' failure to pay all wages, including overtime wages and premiums, due to: (1) time-shaving and rounding, (2) unlawful straight rate compensation, (3) failing to compensate spread of hours premiums, (4) failing to reimburse for uniform maintenance, (5) failing to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (6) failing to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff

and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

25.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

26.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not

parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Defendants employed Plaintiff and Class Members within the meaning of the New York Labor Law;

b)    What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c)    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d)    Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e)    Whether Defendants paid Plaintiff and Class Members their owed spread of hours premiums;

f)   Whether Defendants reimbursed Plaintiff and Class Members for the cost of maintaining their uniforms;

g)   Whether Defendants paid Plaintiff and Class Members for all hours they worked;

h)   Whether Defendants paid Plaintiff and Class Members overtime premiums for all overtime hours they worked;

i)   Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

j)   Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

29.   In or around April 2024, Plaintiff was hired by Defendants to work as a Cook at Defendants' Norimen Restaurant. Plaintiff's employment with Defendants ended in or around July 2025.

30.   From April 2024 to April 2025, Plaintiff was typically scheduled by Defendants to work six (6) hours per day, from approximately 6:00 a.m. to 12:00 p.m., five (5) days per week, without a meal break. As a result, Plaintiff worked approximately thirty (30) hours per week. From April 2025 until termination, Plaintiff worked ten (10) hours per day, from 6:00 a.m. to 4:00 p.m., five (5) days per week, resulting in a total of fifty (50) hours of work per week.

31.    From April 2024 to January 2025, Plaintiff was paid weekly by cash at a wage rate of $19.00 per hour. From January 2025 until termination, he was paid a payroll check for 20 hours and separately by cash for remaining hours at a straight wage rate of $21.00 per hour.

32.    When Plaintiff clocked out, Defendants' time clock system regularly appeared to round his hours down. From January 2025 until his termination, Plaintiff's paystubs did not reflect the exact number of minutes worked, but instead recorded time in whole-hour increments, rounded down.

*Claims of Unpaid Wages due to Improper Rounding and Time-shaving*

33.    At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper wages for all hours they worked, due to Defendants' policy of improper rounding and time-shaving, in violation of the FLSA and the NYLL.

34.    At all relevant times, Defendants rounded Plaintiff, FLSA Collective Plaintiffs, and Class Members' hours down for almost half an hour per day. Instead, Defendants only paid them for rounded hours.

35.    Defendants never compensated Plaintiff for all hours he worked beyond his recorded time.

36.    At all relevant times, Defendants similarly subjected FLSA Collective Plaintiffs and Class Members to the same improper rounding and time-shaving policy and required them to perform work without compensation.

37.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages and overtime wages to Plaintiff, FLSA Collective Plaintiffs and Class Members for all hours they worked due to Defendants' policy of improper rounding and time-shaving, in violation of the FLSA and the NYLL.

*Claims of Unpaid Overtime Premiums due to Unlawful Straight Rate Compensation*

38.    At all relevant times, Defendants failed to pay any overtime premiums to Plaintiff, FLSA Collective Plaintiffs, and Class Members, for all hours they worked over 40 hours per workweek, due to a policy of unlawful straight rate compensation, in violation of the FLSA and the NYLL.

39.    At all relevant times, Defendants compensated Plaintiff at a straight hourly rate of $21.00 per hour for all hours worked, including all of Plaintiff's overtime hours worked. As a result, Plaintiff's overtime hours were compensated at the same regular rate as his regular hours, instead of 1.50 times his regular rate.

40.    At all relevant times, Defendants similarly compensated FLSA Collective Plaintiffs and Class Members at straight hourly rates and failed to compensate them any overtime premiums for all their hours worked over 40 hours per workweek.

41.    Defendants knowingly and willfully operated their business with a policy of not compensating overtime premiums to Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

*Claims of Unpaid Spread of Hours Premiums*

42.    At all relevant times, Defendants failed to compensate spread of hours premiums to Plaintiff and Class Members for all days they worked with a spread of ten (10) or more hours, in violation of the NYLL.

43.    From April 2025 until termination, Plaintiff was required by Defendants to work on weekdays with a spread of ten (10) hours. Including a rounded half-hour per day, this constituted a spread of more than ten (10) hours each day. Class Members were similarly required by Defendants to work days with a spread of ten (10) or more hours.

44.     However, Defendants failed to pay Plaintiff and Class Members their owed spread of hours premiums for every workday lasting more than ten (10) hours.

45.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their properly owed spread of hours premiums, in violation of the NYLL. Defendants' awareness and willfulness is apparent because Defendants regularly scheduled Plaintiff and Class Members to work shifts of ten (10) hours, rounded their worked hours and failed to compensate them with any spread of hours premiums accordingly.

*Claims of Unreimbursed Costs for Maintaining Uniforms*

46.     Throughout Plaintiff's employment with Defendants, Plaintiff was required to maintain his own uniforms which consisted of two shirts with Restaurants' logo. Plaintiff worked five days per week and had to repeatedly alternate between the two shirts, requiring him to wash and iron his uniforms at least twice per week—often more—to maintain cleanliness and compliance with workplace standards. The limited number of uniforms furnished by Defendants was insufficient given the frequency of Plaintiff's work schedule. In total, Plaintiff spent $10 a week drying cleaning his uniforms.

47.     Similarly, FLSA Collective Plaintiffs, and Class Members were also similarly not reimbursed by Defendants for the cost of maintaining their uniforms.

48.     Defendants knowingly and willfully operated their business with a policy requiring Plaintiff, FLSA Collective Plaintiffs and the Class Members to improperly cover uniform maintenance costs in violation of the FLSA and the NYLL.

*Fraudulent Filing and Unjust Enrichment Claims*

49.     At all relevant times, Defendants intentionally and willfully subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to (i) a policy of filing fraudulent tax information on their behalf, in violation of FICA, and (ii) a policy of unjustly enriching

themselves at the expense of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of New York law.

50.    At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were compensated by Defendants in both cash and personal checks. From the start of his employment until January 2025, Plaintiff was paid in cash for all hours worked. After January 2025, Defendants began paying Plaintiff for 20 hours per week by check, while continuing to pay the remaining hours in cash.

51.    As a result of Defendants' paying Plaintiff, FLSA Collective Plaintiffs, and Class Members in cash and personal checks, Defendants failed to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with accurate IRS Forms W-2 for all the tax years of their employments and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, FLSA Collective Plaintiffs, and Class Members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable to Plaintiff, FLSA Collective Plaintiffs, and Class Members for at least five thousand dollars per each fraudulent filing, which would have to be at least once per year.

52.    In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contracts with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

53.    Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on Plaintiff's and Class Members' behalf.

54.     As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

55.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiffs and Class Members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

56.     Even if Defendants could show that they paid some employees a part of their wages in check and filed the appropriate W-2s for those checks, Defendants would remain liable to those employees for failing to pay FICA taxes on the cash portions of their wages.

*Claims of WTPA Violations*

57.     At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants.

58.     At all relevant times, Defendants failed to provide any wage statements because Defendants paid Plaintiff and Class Members partially in cash.

59.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

60.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These

provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, at *21-22 (S.D.N.Y. March 20, 2020)

61.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

62.    Had Defendants provided to Plaintiff and Class Members proper wage statements, as required by law, Defendants would have had to either (a) increase the wages to correspond to the spread of hour premiums earned and reflect their unpaid wages or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the premiums that the employee actually earned. Either possibility would have allowed Plaintiff

and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

63.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

64.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the Plaintiffs earned $ 133,086 as reflected on his final year paystub and W-2").[1]

65.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

66.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

67.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the spread of hours premiums been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the

inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

68.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he Plaintiffs' real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

69.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

70.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the

United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

71.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

72.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

73.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

74.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

75.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

76.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

77.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

78.    At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their properly owed wages for all hours worked, due to a policy of improper rounding, and a policy of time-shaving.

79.    At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their properly owed overtime premiums for all hours worked over 40 hours per workweek, due to a policy of unlawful straight rate compensation.

80.     At all relevant times, Defendants willfully failed to reimburse Plaintiff and FLSA Collective Plaintiffs for the cost of maintaining their uniforms, which resulted in them incurring additional damages on top of not being properly compensated for all hours they worked for Defendants.

81.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

82.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

83.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

84.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

85.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, unpaid overtime wages and premiums, unreimbursed costs for maintaining uniforms, and liquidated damages.

86.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

87.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

88.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

89.     Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failure to pay wages for all hours worked due to improper rounding and time-shaving.

90.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them any overtime premiums due to a policy of unlawful straight rate compensation.

91.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them any spread of hour premiums for all their shifts worked in excess of ten (10) hours.

92.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to reimburse them for the cost of maintaining their uniforms.

93.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

94.     Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

95.     Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

96.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants: their unpaid wages, unpaid overtime

premiums, unpaid spread of hours premiums, unreimbursed costs for maintaining uniforms, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III

### CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER THE INTERNAL REVENUE CODE, 26 U.S.C. § 7434(a)

97.     Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

98.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

99.     By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiffs and Class Members as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

100.     Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

101.     Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiffs for reasonable attorneys' fees.

## COUNT IV

## **BREACH OF CONTRACT**

102.    Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

103.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

104.    When Plaintiff and Class Members accepted offers of employment from Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiffs and Class Members in accordance with all applicable laws. This involved, inter alia, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

105.    Defendants breached this duty when they paid Plaintiff and Class Members in cash and failed to file proper W-2's. As a result, Plaintiffs and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT V

## <u>UNJUST ENRICHMENT</u>

106.    Plaintiff realleges and reavers all the foregoing allegations in this Complaint as if fully set forth herein.

107.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

108.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

109.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages and overtime wages as a result of Defendants' improper rounding and time-shaving, due under the FLSA and the NYLL;

d.  An award of unpaid overtime premiums as a result of Defendants' unlawful straight rate compensation, due under the FLSA and the NYLL;

e.  An award of unpaid spread of hours premiums, due under the NYLL;

f.  An award of unpaid wages due to Defendants' failure to reimburse for the cost for maintaining their uniforms under FLSA and NYLL;

g.  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

h.  Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

i.  Disgorgement from Defendants of all illegally retained sums that should have gone towards Plaintiff's and Class Members' FICA contributions;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

k.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

l.  An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

m.  Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

n.    Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o.    Designation of this action as a class action pursuant to F.R.C.P. 23;

p.    Designation of Plaintiff as Representative of the Class;

q.    Such other and further relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: October 10, 2025                                    Respectfully submitted,
      New York, New York

                                                      By:    /s/ *C.K. Lee*
                                                        C.K. Lee, Esq. (CL 4086)

                                                      **LEE LITIGATION GROUP, PLLC**
                                                       148 West 24th Street, 8th Floor
                                                       New York, NY 10011
                                                       Tel.: 212-465-1188
                                                       Fax: 212-465-1181

                                                       *Attorneys for Plaintiff,*
                                                       *FLSA Collective Plaintiffs,*
                                                       *and the Class*